No. 40,649

Villora Rockhold, *Appellant*, v. The Board of County Commis-sioners of the County of Douglas (Kansas), *Appellee,* and (Howard E. Miller and Robert Eugene Miller, *Defendants*).

(317 P. 2d 490)

Opinion filed November 9, 1957.

*Robert B. Oyler,* of Lawrence, argued the cause, and *Raymond F. Rice,* of Lawrence, was with him on the briefs for appellant.

*John J. Riling,* of Lawrence, argued the cause, and *Wayne Allphin, Jr.,* County Attorney, *Wesley M. Norwood,* Deputy County Attorney, and *Eugene Clyde Riling,* of Lawrence, were with him on the briefs for appellee.

The opinion of the court was delivered by

Schroeder, J.: This is an action to recover damages under the wrongful death statute for the death of plaintiff's son, alleged to have been caused by a defect in a county highway. A separate demurrer to the petition by one of the joint defendants, the Board of County Commissioners of Douglas County, was sustained, and the plaintiff appeals.

Does the petition allege sufficient facts to state a cause of action against the County Commissioners?

The petition discloses that the Board of County Commissioners of Douglas County (appellee) undertook to improve a county road known as the Sibleyville-Olathe road, officially designated as Road No. 208, about four miles south of Eudora, Kansas. At about 8:30 a. m., on June 10, 1954, the county employees of Douglas County were repairing the road by dumping gravel on the traveled portion thereof. The county engineer and the superintendent of roads of Douglas County were supervising the repair. At or about the

time and place aforesaid and in repairing such road, a load of gravel was dumped on the traveled part of the north half of the road by a county employee, leaving a steep, abrupt and precipitous drop-off of approximately seven inches, which constituted a defect in the road. It was not visible to travelers on the road approaching from the east. At or about the time and place aforesaid a 1946 Ford 1½ ton truck owned and driven by Howard E. Miller, a traveler on the road, encountered the gravel. Plaintiff's son, John Rockhold, age 16, was an occupant of the truck riding on the left front fender while William Harralson, also an occupant, was riding on the right front fender. As the moving vehicle encountered the defect heretofore described, John Rockhold was violently thrown from the truck and killed.

The petition alleged acts of negligence on the part of other defendants, not material herein, who were charged with joint and concurring acts of negligence with the Board of County Commissioners. The negligence with which the petition charges the Board is stated as follows:

". . . That the Defendant The Board of County Commissioners of Douglas County permitted said road hereinabove described to become and be unsafe and dangerous to the traveling public by the manner and method in which repairs were being made on said road on said 10th day of June, 1954, as hereinabove set out, and through failure to provide barriers, signs, notices, flagmen or other warning of the dangerous condition of said road."

Prior to 1887 (Laws, 1887, ch. 237) counties, being quasi-corporate subdivisions of the state, were not liable in damages for injuries sustained by reason of the negligence of their officers or employees in the construction or maintenance of highways, bridges or culverts, or because of defects therein. (*Arnold v. Coffey County Comm'rs*, 131 Kan. 343, 291 Pac. 762.) By statute (Laws, 1887, ch. 237, revised and now G. S. 1949, 68-301), counties and townships are made liable under some circumstances in damages for injuries sustained because of *defects* in bridges, culverts and highways. The present statute, so far as here pertinent, reads:

"Any person who shall without contributing negligence on his part sustain damage by reason of any defective bridge, culvert, or highway, may recover such damage . . . from the county when such damage was caused by a defective bridge, culvert or highway which by law, or agreement entered into pursuant to law, the county is obligated to maintain, and when any member of the board of county commissioners, the county engineer or superintendent of roads and bridges of such county shall have had notice of such defects for at least five days prior to the time when such damage was sustained; . . ."

*This statute does not impose liability for general negligence.* It is strictly a statutory liability for *defects* in bridges, culverts and highways.

It was said in *Rosebaugh v. Allen County Comm'rs,* 120 Kan. 266, 243 Pac. 277:

". . . The legislature of 1917 imposed on a county undertaking to improve a highway, duty to maintain detour signs, warnings, barricades, and red lights at night. Failure to discharge this duty renders the county officers subject to prosecution for misdemeanor, but no civil liability was imposed on the corporation. (R. S. 68-121, 68-122.) If the county were suable to the same extent as a city, neglect to comply with a statutory regulation designed to make travel on a highway safer would entail liability to a person injured on account of the negliegnce. The county, however, as an agent of sovereignty, rests under no common liability for negligence of its officers. It is not subject to actions for damages except so far as the legislature has expressly provided. The result is, failure to discharge the duty imposed by the statute of 1917 merely renders the highway defective, and liability for the defect must be enforced under the statute of 1887. ( *Story v. Brown County,* 116 Kan. 300, 226 Pac. 772.)" (p. 267.)

In *Arnold v. Coffey County Comm'rs,* supra, the court has fully analyzed G. S. 1949, 68-301, by enumerating the four elements that must be established before recovery can be had under the statute. There an exhaustive reference to Kansas cases, prior to 1930, as they apply to each of the four requirements is made. Without further elaboration specific reference is made to the *Arnold* case. In the instant case we are concerned with only one of these prerequisites— Does the plaintiff's petition allege sufficient facts to show that any member of the Board of County Commissioners, the county engineer or superintendent of roads and bridges of Douglas County had notice of the defect in the highway as much as five days prior to the fatal injury?

Contrary to Kansas, some states have a theory of common law liability which is summarized in 40 C. J. S. Highways, § 250, p. 281, as follows:

"A distinction has been made by some authorities between acts of misfeasance and nonfeasance, it being held that the county or other governmental subdivision is not liable, unless made so by special statute, for injuries caused by its nonfeasance, as failure to repair the highway, although it is liable for direct acts of misfeasance on the part of its officers or employees which create a nuisance in the highway; but this distinction has been denied by other authorities."

While appellant (plaintiff below) recognizes that Kansas adheres strictly to statutory liability, it is argued that this case may be dis-

tinguished from prior decisions of this court on the facts, and by reason thereof, G. S. 1949, 68-301, requires further construction.

It must be recognized that less than five days elapsed between the creation of the defect in the highway and the accident which caused the death of plaintiff's son in the instant case. Therefore, it is impossible to meet the five-day requirement of notice in the statute.

Appellant argues that the defects in the highway were a creation of the county itself and by reason thereof it needs no actual notice because it is presumed to know its own acts, and therefore has actual notice. In support of this argument cases are cited from Maine, Nebraska, Wisconson, Texas and New York which have construed similar statutes or ordinances in accordance with appellant's theory. Typical of the reasoning in these cases is *Tewksbury v. City of Lincoln,* 84 Neb. 571, 121 N. W. 994, where the court rejected the city's contention that in the absence of a five-day notice, it was absolutely exempt. The opinion said:

". . . the statute does not contemplate exemption from such negligent act; and, further, that all the knowledge that could possibly result from the giving of the notice, were it possible to give it, was already possessed by the city officers.

". . . To hold that five days' notice should be given for a wrong committed by the city itself one hour, or one day, before the occurrence of the accident, and of which the city already has absolute knowledge, would be in the highest degree ludicrous and attribute to the lawmaker a want of foresight, insight and comprehension which we cannot do. It is true that the statute provides that the city shall be 'absolutely exempt from liability' unless such notice be given, but we must give a reasonable construction to the language of the act. The law never requires an impossible thing. The section presupposes that the defect in the public way must have existed at least five days, otherwise the notice would be impossible. But, even if the notice should be held necessary where the defect is caused by the elements, or the unauthorized act of third parties, it could not with any degree of reason be said that it could be required where the danger was created by the negligent act of the city itself. Suppose a deep water or sewer-way trench was excavated across the street just before dark, and no lights or other signals of danger were placed to warn those using the street of its condition, and a person in passing over the street in the dark night, two hours later, with no knowledge of what had been done, should receive an injury by driving or falling into the opening, could one say, that the legislature had in mind such a circumstance and require the five days' notice of the condition of the street? We think not. . . ." (pp. 573, 575, 576.)

(See, also, *McMasters v. City of Lincoln,* 101 Neb. 278, 163 N. W.
319; *Adams v. The City of Oshkosh,* 71 Wis. 49, 36 N. W. 614; *City
of Houston v. Isaacks,* 68 Tex. 116, 3 S. W. 693; *Holmes v. Paris,*
75 Me. 559; *Morneault v. Inhabs. Town of Hampden,* 145 Me. 212,
74 A. 2d 455; *Twist v. City of Rochester,* 55 N. Y. S. 850; *Crandall
v. City of Amsterdam,* 4 N. Y. S. 2d 372; and 40 C. J. S. Highways
§ 263, p. 312.)

The language of an early Kansas case may have opened the way
for the above construction of the statute in question:

".  .  . This defect in the common law was remedied by the enactment
of the statute in question; and the only effect of such statute was to bring a
class of cases within the operation of the common law of negligence which
hitherto had been without. This statute simply declared as to counties and
townships what has always been the law with respect to cities, private cor-
porations and individuals  .  .  ." (*Reading Township v. Telfer,* 57 Kan.
798, 804, 48 Pac. 134.)

Subsequent development of the Kansas law on the precise point
presented in this case, however, is contrary to the construction pro-
pounded by appellant. A case impossible to distinguish on the
facts before this court is *Rosebaugh v. Allen County Comm'rs,*
supra. While there the injuries were sustained at 9:30 p. m., the
last three loads of gravel dumped on the county highway at 5:00
p. m. of the same day were not spread and thus caused a defect in
the highway. The petition alleged the obstruction created by those
three loads of gravel was left without warnings, guards, barricades
or red lights from 5:00 p. m., to 9:30 p. m., on the day of the acci-
dent. The court there affirmed the judgment of the trial court which
sustained a demurrer to the petition, saying:

".  .  . Conceding that the chairman had actual notice of the defect be-
cause the board was doing the work, an indispensable condition of liability—
notice for at least five days—did not exist." (p. 268.)

This court has steadfastly adhered to the foregoing construction
of the statute. (*Hari v. Ohio Township,* 62 Kan. 315, 62 Pac. 1010;
*Erie Township v. Beamer,* 71 Kan. 182, 79 Pac. 1070; *Wagner v.
Edwards County,* 103 Kan. 719, 176 Pac. 140; *Arnold v. Coffey
County Comm'rs,* supra; and *Backstrom v. Ogallah Township,* 149
Kan. 553, 88 P. 2d 1026.)

Appellant argues that under the same circumstances as here pre-
sented Kansas cities are not entitled to notice (*Gilmore v. Kansas
City,* 157 Kan. 552, 142 P. 2d 699), but counties do not rest under

the same liability as cities for negligent street work. This argument was advanced and rejected in *Wagner v. Edwards County,* supra, and *Hari v. Ohio Township,* supra.

The legislature has enacted a statute (G. S. 1949, 68-419) almost identical to 68-301, *supra,* in its material respects creating statutory liability against the State Highway Commission. Cases decided under this statute are analogous to those decided under 68-301, *supra.* The State Highway Commission has not been held liable under 68-419, *supra,* for acts based upon the law of negligence, but is amenable to suit only in the event and for the purpose that the legislature has expressly consented that it be sued. In other words, the liability created is wholly statutory. (*Lungstrum v. State Highway Commission,* 177 Kan. 57, 276 P. 2d 346; and *Bohrer v. State Highway Comm.,* 137 Kan. 925, 22 P. 2d 470.)

Despite the logic of appellant's arguments, we are constrained to adhere to our prior decisions construing G. S. 1949, 68-301, and hold that the liability of a county for defects in a bridge, culvert or highway is conditioned upon the proper county official under the statute having actual knowledge of the specific defect which caused the injury for which damages are sought at least five days prior to the time when the damage was sustained. This construction of the statute has persisted through the reported cases in Kansas since the turn of the century, and the legislature has not seen fit to change it. Therefore, it must be presumed that the construction heretofore placed upon the statute conforms to the legislative intention.

Appellant urges that an outstanding example of the review, reconsideration and overruling of previous decisions deemed to have been erroneous is found in *Noel v. Menninger Foundation,* 175 Kan. 751, 267 P. 2d 934, in which the court stripped from charitable hospitals the mantle of immunity from tort liability with which they had previously been clothed. We are not here confronted with a similar proposition, since this case concerns the construction of a legislative act which creates liability in accordance with its specific terms and likewise proscribes the limitations of such liability.

In view of the foregoing disposition of this case it is unnecessary to consider whether the petition discloses on its face that the injured party, John Rockhold, was guilty of negligence in riding on the fender of the truck just before receiving his fatal injuries.

The judgment of the trial court is affirmed.